# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

RUPERT STAMPS,

    Plaintiff,

    v.

OFFICER LEROY ROLLINS and
DETECTIVE PARIS CAPALUPO,

    Defendants.

Civil Action No. TDC-17-0830

**MEMORANDUM OPINION**

Plaintiff Rupert Stamps, a prisoner incarcerated at Western Correctional Institution in Cumberland, Maryland, has brought this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Officer Leroy Rollins of the Metropolitan Police Department of the District of Columbia ("MPDDC") and Detective Paris Capalupo of the Montgomery County Police Department ("MCPD") in Maryland. Stamps alleges that Rollins violated his rights under the Fourth Amendment to the United States Constitution by providing untruthful and inadequate information in an affidavit supporting Stamps's extradition from Washington, D.C. to Maryland. Stamps further alleges that Capalupo violated his Fourth Amendment rights by providing to Rollins the untruthful information that appeared in the affidavit, and by searching Stamps's cell phone without a warrant. Defendants have each filed a separate Motion to Dismiss. Having reviewed the pleadings and briefs, the Court finds that no hearing is necessary to decide the Motions. *See* D. Md. Local R. 105.6. For the reasons set forth below, Rollins's Motion is GRANTED, and Capalupo's Motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

On November 18, 2014, the District Court for Montgomery County, Maryland issued a warrant for Stamps's arrest.[1] The warrant listed 17 charges, including two counts each of attempted second-degree murder and conspiracy to commit second-degree murder, arising from separate armed robberies of Sweeney Building Services ("SBS") in Gaithersburg, Maryland on August 14, 2014 and November 6, 2014. On November 18, 2014, Stamps was arrested in Washington, D.C. by the MPDDC's Fugitive Unit based on an entry in the National Crime Information Center ("NCIC") system.

On November 19, 2014, Rollins signed an "Affidavit in Support of an Arrest Warrant" before the Deputy Clerk of the Superior Court for the District of Columbia ("D.C. Superior Court"). In the Affidavit, he affirmed that (1) MPDDC had received an NCIC alert that the MCPD had an outstanding arrest warrant for Stamps; (2) the outstanding warrant charged Stamps with "Homicide"; (3) the warrant was dated November 18, 2014; and (4) Stamps had been arrested in Washington, D.C. on November 18, 2014 at 10:00 a.m. Stamps was arraigned in D.C. Superior Court, where he waived extradition while represented by counsel. He was then extradited to Maryland.

During Stamps's arrest in Washington, D.C., the arresting officer took his cell phone. Stamps alleges that his phone was then provided to Capalupo, the MCPD detective investigating the SBS robberies, and that Capalupo retrieved "phone numbers, pictures, texts, incoming calls,

---

[1] Pursuant to Federal Rule of Evidence 201, the Court takes judicial notice of the dockets in Stamps's criminal cases in the District Court and Circuit Court for Montgomery County, Maryland, *State v. Stamps*, Case No. 3D00325741, and *State v. Stamps*, No. 126645C, available at http://casesearch.courts.state.md.us, as well as Stamps's extradition case in the District of Columbia Superior Court, *In the matter of Rupert Wayne Stamps*, Case No. 2014 FUG 020210, available at https://eaccess.dccourts.gov/eaccess/home.page.2.

outgoing calls, [and] personal data" from the phone. Compl. at 6–7, ECF No. 1.[2] The record contains no evidence that a search warrant was obtained prior to this search.

On January 29, 2015, Stamps was indicted on four counts of conspiracy to commit armed robbery. During the ensuing jury trial in the Circuit Court for Montgomery County, the government introduced cell phone records and cellular location data, as well as expert testimony regarding this evidence, to show phone calls between Stamps and his alleged co-conspirators at times relevant to the robberies, and his location at the time of those calls. *See Stamps v. State*, No. 2260, 2017 WL 695371, at *3 (Md. Ct. Spec. App. Feb. 22, 2017). On August 21, 2015, Stamps was convicted on all four counts.

Stamps appealed his conviction to the Court of Special Appeals of Maryland, raising multiple arguments not relevant to this case. The Court of Special Appeals affirmed the trial court on all issues but one: it ruled that Stamps could be convicted on only two counts, one conspiracy charge for each armed robbery of the SBS, because the other two counts were multiplicitous. *See Stamps*, 2017 WL 695371, at *13–14. His case was remanded for resentencing.

While that appeal was pending, Stamps filed a motion in the Circuit Court for Montgomery County seeking a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978) (holding that "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request"). Neither the Motion for a *Franks* Hearing nor the related briefing are in the record.

---

[2] The citations to the Complaint are to the page numbers assigned by the Court's CM/ECF system.

The Circuit Court denied the motion. Stamps then appealed to the Maryland Court of Special Appeals, which described Stamps's motion as follows:

> In that motion, Stamps claimed that prior to being charged in this case, he was arrested pursuant to a warrant in another case that was supported by an affidavit containing materially false statements of fact. He further asserted that when he was arrested on that warrant, some of his personal belongings were improperly seized and that one of those items, a cell phone, was introduced as evidence at his trial in this case.

*Stamps v. State*, No. 1164, 2017 WL 2858945, at *1 (Md. Ct. Spec. App. July 5, 2017). The Court of Special Appeals affirmed the Circuit Court's denial of the motion, stating that Stamps had failed to provide more than conclusory allegations that the warrant contained a deliberate falsehood or showed a reckless disregard for the truth. *Id*. The Court of Appeals of Maryland denied Stamps's petition for a writ of certiorari. *Stamps v. State*, 170 A.3d 299 (Md. 2017) (unpublished).

Several months before the Court of Special Appeals issued its decision, on March 27, 2017, Stamps filed this case pursuant to 42 U.S.C. § 1983 seeking $500,000 in damages based on his Fourth Amendment claims that he was arrested without probable cause and that Capalupo unlawfully searched his cell phone without a warrant. Stamps argues that Rollins is liable for Stamps's allegedly unlawful arrest because he included a false statement that Stamps was wanted for "homicide" in the extradition affidavit submitted to the D.C. Superior Court, and because his affidavit included insufficient information to support a finding of probable cause. Stamps argues that Capalupo is liable for his arrest because he believes that Capalupo provided the false information about Stamps's homicide charge to Rollins, and that Capalupo is liable for searching Stamps's cell phone without a warrant. Both Defendants have filed Motions to Dismiss. Stamps has filed a Motion for Default Judgment.

**DISCUSSION**

Defendants seek dismissal on the grounds that (1) service of process was inadequate; (2) Stamps's arrest in Washington, D.C. and extradition to Maryland were lawful; (3) Capalupo is entitled to qualified immunity; and (4) Stamps's claims are barred by collateral estoppel and *Heck v. Humphrey*, 512 U.S. 477 (1994). Before addressing Defendants' Motions, the Court will first address Stamps's pending Motion for Default Judgment.

**I.     Motion for Default Judgment**

On February 23, 2018, after briefing on both Motions to Dismiss had been completed, Stamps filed a Motion for Default Judgment. Stamps asserts that Rollins incorrectly filed his reply memorandum in support of his Motion to Dismiss and did not remedy that error when the Court asked Rollins to re-file that brief. *See* ECF No. 23. He therefore asks the Court to grant him the relief requested in his Complaint.

Stamps is likely unfamiliar with the Federal Rules of Civil Procedure. A default occurs when a defendant "has failed to plead or otherwise defend" itself in the litigation. Fed. R. Civ. P. 55(a). Here, Rollins has responded to this litigation through a Motion to Dismiss, and despite Stamps's claims to the contrary, he did re-file his reply memorandum as requested by the Court. *See* ECF No. 24. The Motion for Default Judgment will therefore be denied.

**II.    Motions to Dismiss**

**A. Legal Standards**

Defendants seeks dismissal under Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6). Rule 12(b)(5) authorizes dismissal of a case for insufficient service of process. Plaintiffs defending against a Rule 12(b)(5) motion bear the burden to demonstrate that service was

adequate. *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010); *Danik v. Housing Auth. of Balt. City*, 396 F. App'x 15, 16 (4th Cir. 2010) (citing *Dickerson*).

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005). Documents attached to the motion may be considered if "they are integral to the complaint and authentic." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). The court may also take judicial notice of matters of public record. *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

B. Service

Both Defendants argue that this case should be dismissed under Rule 12(b)(5) because they were not served with process in a manner consistent with federal and Maryland law. Typically, State or County personnel named as defendants in prisoner civil rights actions in this District accept service of process pursuant to *In re State Prisoner Litigation*, Misc. No. 00-308, Standing Order 2012-01 (D. Md. 2012). When that method of service is not followed, the United States Marshals Service ("USMS") is directed to effect service on behalf of the prisoner plaintiff.

As a result, the USMS sent the Summons and Complaint by certified mail to both Defendants at their places of business, where individuals who had not been designated as the

Defendants' agents signed for the materials. Although Maryland law allows for service of process by certified mail, the mailing must be sent by "restricted delivery," so that only the addressee may sign for it. Md. Rule 2-121; *Quann v. Whitegate-Edgewater*, 112 F.R.D. 649, 653–54 (D. Md. 1986). In the case of Capalupo, the certified mailing was not sent with "restricted delivery." In the case of Rollins, an unauthorized person signed for the mailing even though it was marked for "restricted delivery." Service was therefore defective. *See id*. at 653–54.

Because any defect in service would be the result of the conduct of the USMS, not Rollins, the Court will not dismiss the case under Rule 12(b)(5), particularly where both Defendants received actual notice of the claims against them such that they have not suffered any prejudice arising from the manner of service. The Court will therefore consider the alternative grounds for dismissal under Rule 12(b)(6). For any remaining claims, if a Defendant is unwilling to waive service, the Court may direct the USMS to re-serve that Defendant.

### C. The Arrest

Stamps argues that his arrest violated his Fourth Amendment rights because Rollins's affidavit lacked sufficient information to establish probable cause and included the allegedly false statement that Stamps was wanted for homicide, a fact that Stamps believes was provided to Rollins by Capalupo. This claim fails for two reasons.

First, the affidavit was not the source of the probable cause determination that led to Stamps's arrest on November 18, 2014 at 10:00 a.m. Rollins completed the affidavit at issue on November 19, 2014, *after* Stamps had already been arrested in Washington, D.C. on the basis of the November 18, 2014 warrant issued by the District Court for Montgomery County, as communicated through the NCIC system. Rollins's affidavit, which appears to have been

7

executed in furtherance of the post-arrest extradition proceeding, did not need to include sufficient detail to support a finding of probable cause. Extradition proceedings are governed by the Extradition Clause of the United States Constitution and the Extradition Act of 1793. U.S. Const. art. IV, § 2, cl. 2; 18 U.S.C. § 3182 (2012); *see California v. Super. Ct. of Cal., San. Bernardino Cty.*, 482 U.S. 400, 405–07 (1987). Under these authorities, extradition proceedings must be "a summary procedure" and are "not the appropriate time or place for entertaining defenses or determining the guilt or innocence of the charged party." *San Bernardino Cty.*, 482 U.S. at 407. A court in the asylum state may address only "(a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive." *Michigan v. Doran*, 439 U.S. 282, 289 (1978). Hence, "when a neutral judicial officer of the demanding state has determined that probable cause exists, the courts of the asylum state are without power to review the determination." *Doran*, 439 U.S. at 290; *see Zambito v. Blair*, 610 F.2d 1192, 1196 (4th Cir. 1979) (holding that "an asylum state may not itself hold a traditional probable cause inquiry when the extradition documents on their face are in order and when those documents, although they do not set out the supporting facts, establish that there had been" a probable cause determination in the demanding state).

The probable cause determination supporting Stamps's arrest had already been made, by a Maryland court, when Rollins signed the affidavit that Stamps is now challenging. Moreover, the D.C. Superior Court, as the court of the asylum state, was prohibited from performing its own probable cause determination. Therefore, to the extent that Stamps is challenging Rollins's

affidavit because it contained insufficient information to support a probable cause determination, that claim must be dismissed.

Stamps further claims that Rollins falsely stated, based on information provided by Capalupo, that Stamps had been charged with homicide. However, Rollins signed his affidavit on November 19, 2014, based on an NCIC entry referencing the warrant issued on the previous day by the District Court of Montgomery County. The docket in the District Court case shows that, at the time Rollins completed his affidavit, Stamps had been charged with two counts of attempted second-degree murder and two counts of conspiracy to commit second-degree murder. *See* Docket, *State v. Stamps*, No. 3D00325741 (Dist. Ct. Montgomery Cty. Nov. 18, 2014). Rollins's assertion in the affidavit that Stamps had been charged with homicide was therefore substantially accurate.

Moreover, even assuming, *arguendo*, that Rollins had made a technically false statement by stating that Stamps was charged with "homicide" rather than "attempted homicide," such a statement would have made no material difference to Stamps's case in D.C. Superior Court. Under *Franks*, an allegedly false statement is only of constitutional concern so as to require a hearing to test the validity of the warrant if the statement "is necessary to the finding of probable cause," in that in the absence of that statement, the affidavit lacks sufficient information to establish probable cause. *Franks*, 438 U.S. at 155–56, 171–72. As the court of an asylum state, the D.C. Superior Court was limited to determining whether the *Doran* factors had been met, that is, whether the extradition documents were facially in order and whether Stamps was a fugitive from justice who had been charged with a crime in Maryland. *See Doran*, 439 U.S. at 289. Here, the particular crime for which Stamps had been charged was irrelevant to this determination and thus was not necessary to the validity of the arrest or the warrant. Either way,

Stamps was still subject to arrest in Washington, D.C. and extradition to Maryland. Where there is no dispute that there was an outstanding arrest warrant from Maryland in the NCIC system, Stamps's claim against Rollins relating to the contents of his affidavit, and his claim against Capalupo for allegedly giving false information to Rollins, will be dismissed. The Court thus need not decide whether, as Capalupo argues, Stamps's affidavit-related claims are also barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), which bars § 1983 actions when "successful prosecution would necessarily imply that the plaintiff's criminal conviction was wrongful." *Id.* at 486 n.6. *See Young v. Nickols*, 413 F.3d 416, 420 (4th Cir. 2005) (stating that *Heck* does not prevent defendants from seeking monetary damages for "procedural irregularities" in the extradition process because such irregularities, if proven true, would not invalidate the plaintiff's criminal conviction).

### D. The Cell Phone Search

Stamps also alleges a Fourth Amendment violation against Capalupo for searching his cell phone without a warrant. In response, Capalupo argues that he is entitled to qualified immunity and that this claim is barred by collateral estoppel and *Heck v. Humphrey*, 512 U.S. 477 (1994).

#### 1. Qualified Immunity

Government officials sued in their individual capacity may invoke qualified immunity. *Bland v. Roberts*, 730 F.3d 368, 391 (4th Cir. 2013). "Qualified immunity protects government officials from civil damages in a § 1983 action insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 250 (4th Cir. 1999)). To overcome a claim of qualified immunity from a § 1983 claim, there must be a showing that (1) the

government official violated a federally protected right of the plaintiff; and (2) that right was clearly established at the time of the alleged misconduct, in that a "reasonable official would understand that what he is doing violates that right." *Id.* Because one of the purposes of qualified immunity is to "protect public officials from the 'broad-ranging discovery' that can be 'peculiarly disruptive of effective government,'" the United States Supreme Court has "emphasized that qualified immunity questions should be resolved at the earliest possible stage of a litigation." *Anderson v. Creighton*, 483 U.S. 635, 646 n. 6 (1987) (citations omitted). If the Court determines that the government official took actions that a reasonable officer could have believed were lawful, then the official is entitled to dismissal before discovery. *Id.*

Although the seizure of the cell phone at the time of Stamps's arrest was authorized as a search incident to arrest, *United States v. Robinson*, 414 U.S. 218, 224 (1973), Stamps alleges a violation at the next step of law enforcement activity: that Capalupo searched the contents of the seized cell phone without a warrant. Capalupo's search of the contents of the cell phone occurred in or after November 2014. Five months before, on June 25, 2014, the Supreme Court ruled that warrantless searches of digital information on cell phones violate the Fourth Amendment. *See Riley v. California*, 134 S. Ct. 2473, 2485 (2014). Because a reasonable officer in November 2014 would have been aware of this decision, Capalupo is not entitled to qualified immunity for this claim.

### 2. Collateral Estoppel

Alternatively, Capalupo argues that Stamps's claim is barred by collateral estoppel because the search's legality was already determined during Stamps's criminal trial and subsequent appeals in the Maryland courts. A valid state court judgment that a search was reasonable under the Fourth Amendment generally precludes re-litigation of the search's

constitutionality in a later § 1983 action if the law of the state in which the judgment was issued would give that previous judgment preclusive effect. *See* 28 U.S.C. § 1738 (2012); *Haring v. Prosise*, 462 U.S. 306, 312–13 (1983); *Allen v. McCurry*, 449 U.S. 90, 103–04 (1980). However, the party against whom the previous judgment is asserted must have had "a full and fair opportunity to litigate the claim or issue decided by the first court," and at times "additional exceptions to collateral estoppel may be warranted in § 1983 actions in light of the 'understanding of § 1983' that 'the federal courts could step in where the state courts were unable or unwilling to protect federal rights.'" *Haring*, 462 U.S. at 313–14 (quoting *Allen*, 449 U.S. at 101).

Under Maryland law, courts apply a four-part test to determine whether the doctrine of collateral estoppel applies:

1. Was the issue decided in the prior adjudication identical with the one presented in the action in question?
2. Was there a final judgment on the merits?
3. Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?
4. Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?

*Shader v. Hampton Imp. Ass'n, Inc.*, 115 A.3d 185, 193 (Md. 2015).

The Court has not been provided with a transcript of Stamps's criminal trial, and it is unclear what, if any, ruling was made by the Circuit Court for Montgomery County regarding the legality of the cell phone search. The opinion of the Maryland Court of Special Appeals on Stamps's appeal notes that cell phone records showing calls among conspirators and the times of those calls, as well as cellular location data, were introduced during Stamps's trial, but such cell phone records and other evidence could have been obtained without searching Stamps's cell phone. *See Stamps v. State*, No. 2260, 2017 WL 695371, at *3 (Md. Ct. Spec. App. Feb. 22,

2017). There is no indication that any of the "pictures, texts," and "personal data" referenced by Stamps in his Complaint were introduced at his trial. Compl. at 7. Moreover, there is also no notation in the docket of Stamps's criminal case in the Circuit Court for Montgomery County that a motion to suppress cell phone evidence was filed or adjudicated. Where Capalupo has not established that the legality of Capalupo's search was actually litigated and adjudicated in a prior case, collateral estoppel is unavailable. Because collateral estoppel is an affirmative defense that may require the development of a factual record, the Court will deny the motion to dismiss on the issue of collateral estoppel without prejudice to re-filing at a later stage of the case.

### 3. *Heck v. Humphrey*

Finally, Capalupo's argument that Stamps's claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), is also unavailing. *Heck* bars a § 1983 claim when the success of that claim would "necessarily imply that the plaintiff's criminal conviction was wrongful." *Id.* at 486 n.6. Thus, when a plaintiff asserts a § 1983 claim to challenge the legality of a search, that claim will be barred if the search produced evidence that was both introduced at the plaintiff's prior criminal trial and necessary to the conviction. For example, in *Ballenger v. Owens*, 352 F.3d 842 (4th Cir. 2003), the United States Court of Appeals for the Fourth Circuit dismissed a § 1983 claim against a police officer who had searched the plaintiff's vehicle pursuant to *Heck* because a favorable ruling would have "necessarily invalidate[d] the criminal conviction." *Id.* at 843, 846. The challenged search had uncovered cocaine that was introduced as evidence in the plaintiff's later criminal trial, and "if it were suppressed as evidence, there would [have been] no evidence to convict [the plaintiff] for drug trafficking." *Id.* at 847. In *Heck*, the Supreme Court cautioned, however, that a § 1983 "suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial" that

13

resulted in the plaintiff's conviction. *Heck*, 512 U.S. at 487 n.7. "Because of doctrines like independent source and inevitable discovery, and especially harmless error, such a § 1983 action, even if successful, would not *necessarily* imply that the plaintiff's conviction was unlawful." *Heck*, 512 U.S. at 487 n.7 (internal citations omitted).

Here, Capalupo has not provided enough information for the Court to determine whether evidence obtained from the cell phone search, such as pictures, texts, and other data, were introduced at Stamps's criminal trial and were necessary to his conviction. As discussed above, the fact that cell phone records and cellular location data were introduced does not establish that the contents of the cell phone were admitted as evidence, because Stamps's cell phone number, cell phone records, and location data may have been obtained directly from the cell phone service provider, without relying on information derived from a search of the cell phone itself. Even if certain contents of Stamps's cell phone had been admitted as evidence and were crucial to his conviction, there may have been independent sources for the same information, or the evidence against Stamps may have been so overwhelming that the introduction of illegally obtained cell phone evidence was harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 24 (1967). Because Capalupo has not made the necessary showing at this time for the Court to apply *Heck*, his Motion to Dismiss will be denied without prejudice as to the cell phone search.

## CONCLUSION

For the foregoing reasons, Defendant Rollins's Motion to Dismiss is GRANTED, and Defendant Capalupo's Motion to Dismiss is GRANTED IN PART and DENIED IN PART. A separate Order shall issue.

Date: March 15, 2018

THEODORE D. CHUANG
United States District Judge